UNTIED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CERTAINTEED CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 2992 |
| | ) | |
| JEROME O. WILLIAMS, JR. | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On May 31, 2006, plaintiff CertainTeed Corporation ("CertainTeed")[1] filed a one-count complaint, alleging breach of contract against its former employee Jerome O. Williams, Jr. ("Williams"). (Dkt. No. 1). Pending before the court is CertainTeed's motion for preliminary injunction that was first submitted to the court's chambers as the "Emergency Motion for Temporary Restraining Order and Preliminary Injunction" and has been filed today, June 27, 2006, *nun pro tunc* to May 31, 2006. (Dkt. No. 25). This court has considered the parties' written briefing and "Stipulated Facts." (Dkt. Nos. 22, Ex. 1; 24-26). This court also conducted an evidentiary hearing on June 27, 2006, during which this court heard the opening statements of counsel for the parties, and plaintiff CertainTeed was given a full opportunity to present its case-in-chief. (Dkt. No. 27). At the conclusion of CertainTeed's case-in-chief, Williams made an oral motion for judgment as a matter of law pursuant to Rule 52(c) of the Federal Rules of Civil

---

[1] Saint-Gobain Corporation is the parent corporation of CertainTeed. (Dkt. No. 8). Some of the documents provided by the parties in the record apply to all Saint-Gobain Corporation employees including CertainTeed employees. For the purpose of this motion, there is no difference between Stain-Gobain and CertainTeed, and so this court will make all references to CertainTeed.

Procedure, ("Rules"). For the reasons set forth below, this court grants Williams' oral motion for judgment as a matter of law and denies CertainTeed's motion for preliminary injunction.

BACKGROUND

This case involves the movement of a management employee, Williams, from CertainTeed, to IKO Industries ("IKO"), a competitor of CertainTeed in the roof shingle industry. The primary issue before this court is whether the Noncompete Employee Agreement ("Noncompete Agreement") (Dkt. No. 24, Ex. B), signed by Williams while at CertainTeed can lawfully prohibit Williams' new employment at IKO.

Williams began working at CertainTeed as a Plant Engineer in CertainTeed's Ennis, Texas facility in August 1999. (Dkt No. 24 at ¶ 18). He was promoted to Operations Manager in September 2001 (*Id.* at ¶ 21) and to Acting Plant Manager in June 2002. (*Id.* at ¶ 23). Williams was an "at-will" employee at all times during his employment with CertainTeed. (*Id.* at ¶ 35). Williams executed the Noncompete Agreement on June 12, 2002. (*Id.* at ¶ 26); (*Id.* at Ex. B). Prior to becoming Acting Plant Manager in June 2002, Williams was only required to read and to follow CertainTeed's "Code of Ethics and Business Conduct Statement for Exempt and Non-Exempt Salary Employees." ("Code of Ethics") (*Id.* at Ex. L). The Code of Ethics imposed various requirements on covered employees including the protection of CertainTeed's confidential information and the prohibition on CertainTeed employees against attempting to "acquire a competitor's trade secrets or other proprietary or confidential information through unlawful or unethical means [including] disclosures by the competitor's present or former employees, or breach of a competitor's non-disclosure agreement by a customer or other party." (*Id.* at Ex. L, pg. 14).

Under CertainTeed's policies there are employees, primarily union employees, who have some access to a portion of CertainTeed's confidential information despite the fact that they are not covered by either the Code of Ethics or the Noncompete Agreement. (*Id.* at ¶¶ 103-115). By way of example, the testimony presented at the June 27, 2006 hearing was that fifty of the sixty-five employees at the Ennis, Texas plant are union employees, and in turn these fifty employees are not covered by any type of nondisclosure, noncompete or other restrictive covenant. Furthermore, CertainTeed has no formal policy in place directing employees to mark or otherwise designate documents containing information CertainTeed deems to be confidential as "CONFIDENTIAL." (*Id.* at ¶ 116). Nor does CertainTeed provide standard training to instruct employees on what information is confidential or the proper procedures for keeping that information confidential. (*Id.* at ¶ 117).

Williams' promotion to Acting Plant Manager in June 2002 resulted in a $250.00 per month raise in salary. The Noncompete Agreement executed by Williams when he commenced his tenure as Acting Plant Manager imposed additional restrictions beyond those previously required of Williams under CertainTeed's Code of Ethics. Under Paragraph 3 of the Noncompete Agreement, Williams promised (1) to protect CertainTeed's confidential, trade secret and proprietary information, (2) to only use that information in the performance of his duties at CertainTeed, and (3) to return confidential, trade secret and proprietary information when he left CertainTeed. (*Id.*, Ex. B, at ¶ 3). In Paragraph 6, Williams agreed not to work for a competing company while working at CertainTeed and not to work for a competing company for one year after leaving CertainTeed. (*Id.*, Ex. B. at ¶ 6). Paragraph 7 of the Noncompete Agreement stated that:

> I acknowledge the nature of my employment, and [CertainTeed's] inability to be adequately compensated by money damages as a result of loss of Confidential Information, is such as to require some restriction of my activities should I leave my employment. Therefore, in consideration of my employment, continued employment, increased compensation, change in responsibility in my present employment, or other benefit, I agree to the following obligations pertaining to any post-employment period:
>
> > I shall not, without written consent signed by an officer of [CertainTeed], directly or indirectly (whether as owner, partner, consultant, employee or otherwise), at any time during the one year period following termination of my employment with [CertainTeed], engage in or contribute my knowledge to any work or activity that involves a product, process, apparatus, service or development (i) which is then competitive with or similar to a product, process, apparatus, service or development on which I worked or (ii) with respect to which I had access to Confidential Information while at [CertainTeed] at any time during the period prior to such termination. The preceding sentence shall not apply if my employment is terminated by [CertainTeed] without cause. The above one year period shall not run during any period in which I am in violation of this paragraph.
> >
> > In event of a breach by me of this covenant, and in recognition that any remedy at law for any breach or threatened breach would be difficult to measure and inadequate and that any such breach or threatened breach would cause such immediate and permanent damages as would be irreparable, [CertainTeed], in addition and as a supplement to such rights and remedies as may exist in its favor, may apply to any court of law or equity having jurisdiction to enforce the specific performance of this covenant, and/or may apply for injunctive relief against an act which would violate this covenant.
>
> If any provision of this Agreement is or becomes or is deemed to be invalid, illegal, or unenforceable in any jurisdiction, such provision shall be deemed to be amended to conform to applicable laws so as to be valid and enforceable, or if it cannot be so amended without materially altering the intention of the parties, it shall be stricken, and the remainder of this Agreement shall remain in full force and effect.

(*Id.*, Ex. B at ¶¶ 7-8).

CertainTeed alleges that Williams' position as Acting Plant Manager and Plant Manager of the Ennis, Texas plant allowed him to work with and have access to CertainTeed's

confidential, trade secret and/or proprietary information as to CertainTeed's: (1) manufacturing procedures, (2) manufacturing strengths and weaknesses, (3) impact resistant shingle design, (4) wide track manufacturing technology and design, (5) sales projects and plans, (6) financial information, (7) quality control programs, and (8) product performance. (*Id.* at ¶ 33). CertainTeed also alleges that Williams was able to interact frequently with other CertainTeed plant managers across the United States, CertainTeed's Vice-President of Manufacturing, and individuals in CertainTeed's Research and Development corporate group. (*Id.* at ¶ 34). These communications were designed to allow the sharing of technology and best practices among CertainTeed's manufacturing plants.

Although Williams was required to sign the Noncompete Agreement, the testimony at the June 27, 2006 hearing revealed that not all CertainTeed plant managers were required to sign an agreement identical to Williams' Noncompete Agreement. Two of CertainTeed's eleven shingle manufacturing plant managers and three of fifteen total plant managers in the United States were promoted to their position without being required to sign the Noncompete Agreement. All CertainTeed plant managers are covered by the less restrictive Code of Ethics. However, the testimony was that no efforts were made to distinguish these three plant managers who had not signed the Noncompete Agreement in CertainTeed's sharing of technology and best practices among its manufacturing plants.

The parties agree that Williams' employment at CertainTeed terminated on April 11, 2006, though the parties dispute whether Williams left on his own accord or whether he was effectively pushed out. When he left, however, Williams refused to tell CertainTeed his future employment plans. (*Id*. at ¶¶ 22-23). Later in 2006, CertainTeed learned that Williams on

March 22, 2006 signed an employment agreement to become the Plant Manager of IKO's Kankakee, Illinois plant. (*Id.* at ¶ 43). The parties agreed that Williams had been looking for outside employment while at CertainTeed during the Fall of 2005 and had engaged in discussions with IKO between the Fall of 2005 through the Spring of 2006. (*Id.* at ¶¶ 36-44).

IKO is a competitor of CertainTeed in the development, manufacturing and sales of roofing shingles used in commercial and residential roofing in the United States, Europe and Asia. CertainTeed alleged in its May 31, 2006 complaint that IKO's roofing products manufactured at the Kankakee plant uses processes, apparatus, services and developments which compete with and are similar to CertainTeed's products, processes, apparatus, services and developments on which Williams worked and had access to confidential information while at CertainTeed. (Dkt. No. 1 at at ¶ 26). CertainTeed also alleged in its complaint that IKO's Kankakee plant produces products that compete with and are similar to CertainTeed's products that Williams produced while working at CertainTeed. (*Id.* at ¶ 27).

However, in the June 27, 2006 "Stipulated Facts", CertainTeed agreed that "CertainTeed does not know exactly what equipment will be utilized in [IKO's] Kankakee plant," and "CertainTeed has no evidence indicating that Williams has disclosed, utilized, or offered to disclose or utilize, any information or documents that CertainTeed deems to be confidential, proprietary or trade secret in nature." (Dkt. No. 24 at ¶¶ 118-19). The "Stipulated Facts" also states that Wayne Thompson, who was previously a manufacturing manager for CertainTeed in CertainTeed's Shreveport, Louisiana plant, testified in a deposition that "he knew of no reason why Williams could not go to work for IKO and still maintain his obligation not to disclose nor utilize CertainTeed's confidential information." (*Id.* at ¶ 120). At the June 27, 2006 evidentiary

hearing, CertainTeed presented the testimony of two high ranking CertainTeed executives, Kermit Stahl and Husnu Kalkanoglu, who opined that Williams would be unable to work at the IKO plant without drawing upon CertainTeed's confidential information.

CertainTeed seeks equitable relief to enforce the Noncompete Agreement, an accounting and payment of any salary or other benefit obtained by Williams in violation of the Noncompete Agreement and costs. On June 2, 2006, the court began to address CertainTeed's motion for a temporary restraining order ("TRO"). Counsel for the parties, however, reached an agreement, stated on the record, that mooted CertainTeed's TRO motion. In counsels' agreement to resolve the TRO, the parties agreed that IKO would transfer Williams to another position, amendable to CertainTeed, outside of the Kankakee plant that did not involve the manufacturing of shingles until this court could rule on the pending preliminary injunction motion. (Dkt. No. 19). In the counsels' agreement resolving the TRO, the parties also agreed that Williams would be restrained until June 27, 2006 or further order of court. (*Id.*) The court, today, June 27, 2006, held an evidentiary hearing on CertainTeed's motion for preliminary injunction. (Dkt. No. 27).

## LEGAL STANDARDS

Rule 52(c) allows this court to enter a judgment as a matter of law against a party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue once the party has been fully heard on that issue. Fed. R. Civ. P. 52(c). Rule 52(c) requires that a judgment as a matter of law shall be supported by findings of facts and conclusions of law as required by Rule 52(a), which may be stated in a judicial opinion such as this. *Louis Vuitton, S.A. v. K-Econo Merchandise*, 813 F.2d 133, 134 (7th Cir. 1987) (quoting *Kelley v. Everglades Drainage Dist.*, 319 U.S. 415, 422 (1943)); *see*

7

*e.g.*, *Sutter Ins. Co. v. Applied Sys., Inc.*, 393 F.3d 722, 727 (7th Cir. 2004) (noting that the judge's decision should trace a clear path from the evidence to the judgment).

"Rule 52(c) allows the district court to weigh evidence to determine whether the plaintiff has proven his case."[2] *Ortloff v. United States*, 335 F.3d 652, 660 (7th Cir. 2003) (citing *Collins v. Ralston Purina Co.*, 147 F.3d 592, 599 (7th Cir. 1998)). Upon review, the Seventh Circuit evaluates the district court's "factual determinations under the clearly erroneous standard, giving 'due regard to the opportunity of the trial court to judge the credibility of the witnesses.'" *Collins*, 147 F.3d at 599 (quoting *Zeige Distrib. Co. v. All Kitchens, Inc.*, 63 F.3d 609, 612 (7th Cir. 1995)).

"A preliminary injunction is an extraordinary remedy that is only granted where there is a clear showing of need." *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). This court's decision on whether to issue a preliminary injunction is reviewed by the Seventh Circuit under an abuse of discretion standard. *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 703 (7th Cir. 2005) (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). "As a threshold matter, [CertainTeed] must show (1) a likelihood of success on the merits, (2) irreparable harm if the preliminary injunction is denied, and (3) the inadequacy of any remedy at law." *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). Once the three primary factors are considered, this

---

[2] It should be noted that Rule 52(c)'s standard for the entry of judgment as a matter of law is different than the standard applied under Rule 50(a). Rule 50 requires a court to "consider the evidence in light most favorable to the plaintiff" when evaluating a motion for judgment as a matter of law in jury trials. *Ortloff v. United States*, 335 F.3d 652, 660 (7th Cir. 2003) (citing *Payne v. Milwaukee County*, 146 F.3d 430, 432 (7th Cir. 1998)). Rule 52(c) governs motions for judgment as a matter of law in a bench trials and hearings, and therefore is the proper standard in this case, because the court is both the finder of fact and decider of law. *Id.*

court must balance (4) the harm to parties if the preliminary injunction is wrongfully decided ("the private interests"), and (5) the impact on the persons not directly concerned in the dispute ("the public interests"). *Id.*

ANALYSIS

Williams argues that Texas law, not Pennsylvania law, should be applied in this case and Noncompete Agreement is invalid under Texas law, or in the alternative under Pennsylvania law, because the covenant is not supported by consideration. He also argues that CertainTeed has failed to take any action to protect its confidential information and that if the Noncompete Agreement is applied, there is no evidence that he has disclosed confidential information covered therein. Lastly, he argues that the covenant is not applicable because he was forced to leave the CertainTeed.

A. Choice of Law

This court sits in diversity, and therefore must apply Illinois's choice of law principles to determine the state substantive law governing this case. *Tanner v. Jupiter Reality Corp.*, 433 F.3d 913, 915 (7th Cir. 2006) (citing *Klaxon Co. Elec. Mfg. Co.*, 313 U.S. 496 (1941); *French v. Beatrice Foods Co.*, 854 F.2d 964, 966 (7th Cir. 1988)). Williams, applying Section § 188 of the Second Restatement of the Conflict of Laws, argues that Texas law should be applied in this case because Texas has a substantially greater interest than Pennsylvania. Williams' balancing of interests argument is irrelevant because the parties have already agreed to a choice of law provision in the Noncompete Agreement. (Dkt. No. 24, Ex. B. at ¶ 12) ("This agreement is to be construed in accordance with the laws of the Commonwealth of Pennsylvanian without giving effect to its principles of conflict of laws."). Illinois' choice of law rules respect a parties' choice

9

of law clause as [long as] the contract is valid and the law chosen is not contrary to Illinois' fundamental public policy." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004) (citing *Fulcrum Fin. Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000)). The parties have made a valid choice of law selection that this court will respect. This court shall apply Pennsylvania law.

B. The Noncompete Agreement between CertainTeed and Williams

"Pennsylvania courts have historically been reluctant to enforce contracts that place restraints on trade or on the ability of an individual to earn a living; however, post-employment non-competition covenants are not *per se* unreasonable or unenforceable. *WellSpan Health v. Bayliss*, 869 A.2d 990, 996 (Pa. Super. Ct. 2005) (citing *Hess v. Gebhard & Co., Inc.*, 808 A.2d 912, 917-18 (Pa. 2002); *Insulation Corp. of Am. v. Brobston*, 667 A.2d 729, 733 (Pa. 1995)). Restrictive covenants are strictly construed against the employer because they are a restraint on the employee's trade. *Fres-Co Sys. USA, Inc. v. Bodell*, No. Civ. A. 05-3349, 2005 WL 3071755, at *3 (E.D. Pa. Nov. 15, 2005) (citing *All-Pak, Inc. v. Johnston*, 694 A.2d 347, 351 (Pa. Super. Ct. 1997)). The inquiry "is a factual one, requiring consideration of all the facts and circumstances." *Coventry First, LLC v. Ingrassia*, No. Civ. A. 05-2802, 2005 WL 1625042, at *7 (E.D. Pa. July 11, 2005) (citing *Jacobson & Co. v. Int'l Envtl. Corp.*, 235 A.2d 612, 619-20 (Pa. 1967); *Wellspan Health*, 869 A.2d at 999).

"In Pennsylvania, restrictive covenants [such as covenants not to compete and non-disclosure agreements] are enforceable if they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and

geographic extent." *Hess*, 808 A.2d at 917 (citing *Sidco Paper Co. v. Aaron*, 351 A.2d 250 (1976); *Morgon's Home Equip. Corp. v. Martucci*, 136 A.2d 838 (1957)); *see also Nextgen Healthcare Info. Sys, Inc. v. Messier*, No. 05 C 5230, 2005 WL 3021095, at *11 (E.D. Pa. Nov. 10, 2005) (citing Pennsylvania law) (listing a fourth requirement of the agreement being supported by adequate consideration while other courts integrate the consideration requirement within the requirement that the covenant be incidental to the employment relationship). Williams, as the employee, has the burden of demonstrating that the restrictive covenant is unreasonable in scope. *Nextgen Healthcare Info. Sys, Inc.*, No. 05 C 5230, 2005 WL 3021095, at *12 (citing *John G. Bryant Co. v. Sling Testing & Repair, Inc.*, 369 A.2d 1164, 1169 (Pa. 1977)).

      1.  <u>Incident to Employment Relationship and Sufficiency of Consideration</u>

      Williams recognizes that the Noncompete Agreement was part of his employment relationship with CertainTeed. However, he argues that the Noncompete Agreement is unenforceable because it is not supported by consideration. On June 12, 2002, Williams signed the Noncompete Agreement containing the restrictive covenant when promoted to acting plant manager in June 2002. (Dkt. No. 24 at ¶ 26). He argues that the annual "raise of $3,000 with his increased obligations, compared to what he got once he was actually promoted to plant manager, what is paid generally to persons of such a level not subject to such non-compete obligations, was of no real benefit to him and was insufficient to support a non-compete which would preclude Williams from working in the industry for at least a year or, arguably, for as long as the alleged confidential information provided to him by CertainTeed remains confidential." (Dkt. No. 22 at pg. 13).

"If an employment contract containing a restrictive covenant is entered into subsequent to employment, it must be supported by new consideration which could be in the form of a corresponding benefit to the employee or a beneficial change in his employment status." *Fres-Co-Sys. USA, Inc. v. Bodell*, No. Civ. A. 05-3349, 2005 WL 3071755, at *3 (E.D. Pa. Nov. 15, 2005) (quoting *Modern Laundry & Dry Clean v. Farrer*, 536 A.2d 409, 411 (Pa. Super. Ct. 1988)). The court finds that sufficient consideration supports Williams' Noncompete Agreement with CertainTeed. In exchange for Williams' promise to perform his new duties as acting plant manager and comply with the agreement, CertainTeed promised to pay Williams a higher salary and provide him a new and more prestigious employment position. Williams' argument addresses not the sufficiency of the consideration but the adequacy of the consideration. However, "Pennsylvania courts have long held that the adequacy of consideration is not a factor to be considered in determining the validity and enforceability of a contract." *Adelvision L.P. v. Groff*, 859 F. Supp. 797, 805 (E.D. Pa. 1994) (citing Pennsylvania law).

    2. Necessary to Protect CertainTeed's Legitimate Interest

A covenant in a noncompetition agreement must protect a legitimate interest of the employer in order to be valid. *Omicron Sys, Inc. v. Weiner*, 860 A.2d 554, 560 (Pa. Super. Ct. 2004) (citing *Hess*, 808 A.2d at 920-21); *see also Nextgen Healthcare Info. Sys, Inc.*, No. 05 C 5230, 2005 WL 3021095, at *12 (citing *John G. Bryant Co. v. Sling Testing & Repair, Inc.*, 369 A.2d at 1169) ("Restrictive covenants will only be enforced to the extent necessary to protect the plaintiff's legitimate interests."). Protection of trade secrets, confidential information, goodwill and unique or extraordinary skills are legitimate interests supporting a covenant but "if the covenant is inserted into the agreement for some other purpose, as for example, eliminating or

12

repressing competition or to keep the employee from competing so that the employer can gain an economic advantage, the covenant will not be enforced." *Id.* Additionally, information must be confidential to be subject to a non-disclosure agreement. *William A. Graham Co. v. Haughey*, – F. Supp. 2d –, No. 05-612, 2006 WL 1214784, at *16 (E.D. Pa. May 4, 2006) (citing *Hess*, 808 A.2d at 920)).

Paragraph 3 of the Noncompete Agreement properly requires Williams (1) to protect CertainTeed's confidential, trade secret and proprietary information, (2) to only use that information in performance of his duties at CertainTeed, and (3) to return confidential, trade secret and proprietary information when he left CertainTeed. (Dkt. No. 1, Ex. A at ¶ 3). However, Paragraph 7 of the Noncompete Agreement expands beyond confidential information, trade secret and covered proprietary information (from which CertainTeed derives an economic advantage) to restrict Williams by causing him to state:

> I [Williams] shall not, without written consent signed by an officer of [CertainTeed], directly or indirectly (whether as owner, partner, consultant, employee or otherwise), at any time during the one year period following termination of my employment with [CertainTeed], [engaging] in or contribut[ing] my knowledge to any work or activity that involves a product, process, apparatus, service or development (i) which is then competitive with or similar to a product, process, apparatus, service or development on which I worked or (ii) with respect to which I had access to Confidential Information while at [CertainTeed] at any time during the period prior to such termination.

(Dkt. No. 1, Ex. A at ¶ 7). Paragraph 7 is an unreasonable restraint because it prohibits Williams from engaging in any competing business even when that competition does not involve the use of any confidential information, trade secret, goodwill or unique or extraordinary skills.

The Pennsylvania Supreme Court has repeatedly held that, as a court of equity, a court may reform overly broad restrictions to restrictions that are "reasonably necessary for the

13

protection of the employer." *Fres-Co Sys. USA, Inc.*, Civ. A. 05-3349, 2005 WL 3071755, at *3 (citing Pennsylvania law). The proper approach is to delete (i) from Paragraph 7. The reformed portion of Paragraph 7 reads:

> I [Williams] shall not, without written consent signed by an officer of [CertainTeed], directly or indirectly (whether as owner, partner, consultant, employee or otherwise), at any time during the one year period following termination of my employment with [CertainTeed], engage in or contribute my knowledge to any work or activity that involves a product, process, apparatus, service or development with which I had access to Confidential Information while at [CertainTeed] at any time during the period prior to such termination.

Williams has a right to engage in work that competes with CertainTeed as long as that work does not require him to "engage in or contribute" to his new employer, IKO, his knowledge of the confidential information that CertainTeed has a legitimate interest in protecting. It is Williams' use or disclosure of CertainTeed's protected information for the benefit of a business competing with CertainTeed that the law prohibits.

In applying the Noncompete Agreement, as reformed by the court, this court finds that CertainTeed has failed to provide evidence sufficient to meet its burden on its motion for a preliminary injunction. CertainTeed failed to prove that Williams has disclosed, utilized or offered to his new employer IKO any of CertainTeed's protectable information. The fact that Williams is involved with IKO, a competing company, does not, as a matter of law, mean that he is utilizing protected information at his new employer. In fact, the parties' "Stipulated Facts" paragraph 118 states: "CertainTeed has no evidence indicating that Williams has disclosed, utilized, or offered to disclose or utilize, any information or documents that CertainTeed deems to be confidential, proprietary or trade secret in nature." (Dkt. No. 24 at ¶ 118). CertainTeed's failure to demonstrate that Williams has used or disclosed any of CertainTeed's protected

information in his new position at IKO means that CertainTeed has not demonstrate a likelihood of success on the merits of its claim and in turn CertainTeed's motion must be denied.

This court's ruling does not mean that Williams has free reign to use any information in which CertainTeed has a protectable interest in his new employment IKO. CertainTeed's valuable information covered under Paragraphs 3 and 7 of the Noncompete Agreement belongs to CertainTeed and Williams has an obligation under the Noncompete Agreement not to disclose that information or use that information in any way other than for the benefit of CertainTeed. CertainTeed, however, must also recognize that it cannot stop Williams from working at IKO simply because IKO is CertainTeed's competitor. Williams is free to work for IKO as long as he complies with the Noncompete Agreement and continues to refrain from using or disclosing CertainTeed's protected information.

CONCLUSION

For the reasons set forth above, this court grants defendant Williams' oral motion of June 27, 2006 for judgment as a matter of law pursuant to Rule 52(c) of the Federal Rules of Civil Procedure and denies plaintiff CertainTeed's motion for preliminary injunction filed June 27, 2006 *nun pro tunc* to May 31, 2006. (Dkt. No. 25). The parties are requested to hold a Rule 26(f) conference and file a jointly completed Form 35 signed by counsel for the parties on or before July 14, 2006. The parties are requested to submit a courtesy copy of the Form 35 to Chambers on the day of filing. This case is set for a report on status and entry of a scheduling order at 9:00 a.m. on July 18, 2006. The parties are also encouraged to discuss settlement.

                                                      Enter:

                                                      JAMES F. HOLDERMAN
                                                      United States District Judge

Date: June 27, 2006